IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR J. RODRIGUEZ and | § | |
| MARIA F. RODRIGUEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3065 |
| | § | |
| STANDARD GUARANTY INSURANCE | § | |
| COMPANY and JEFFREY BENTLEY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Hector and Maria Rodriguez bring this action against Standard
Guaranty Insurance Company ("Standard") and Jeffrey Bentley
alleging that Standard and Bentley wrongfully handled an insurance
claim for damage to the Rodriguezes' home. Pending before the
court is Plaintiffs Hector and Maria Rodriguez's Motion to Remand
and Supporting Memorandum (Docket Entry No. 7), which argues that
removal to this court was improper because this court lacks
original subject-matter jurisdiction. At issue is whether Bentley,
the adjuster for the Rodriguezes' claim, is a proper defendant in
this action. For the reasons explained below, the court will grant
the Rodriguezes' motion and remand this action.

## I. Factual and Procedural Background

### A. The Rodriguezes' Insurance Claim

Prior to the events giving rise to this action, the
Rodriguezes purchased a Texas Homeowners' Insurance Policy from

Standard.[1]  In the evening of September 12 and the early morning of
September 13, 2008, the Rodriguezes' home was damaged by Hurricane
Ike, a category 2 hurricane that inflicted substantial destruction
throughout the Texas Gulf Coast area.[2]  In May of 2009 the
Rodriguezes submitted a claim to Standard, seeking payment for
damages to the exterior and interior of their home, including their
roof, ceilings, walls, insulation, and flooring.[3]  Standard
assigned the claim to Bentley,[4] who inspected the Rodriguezes' home
on June 3, 2009.[5]  Later that day, Bentley sent the Rodriguezes a
letter informing them that Standard had issued a check for
$8,311.35 to their mortgage lender as settlement of their claim.[6]
The settlement amount consisted of the total cost of repair or
replacement, minus the Rodriguezes' deductible and recoverable
depreciation.[7]  Standard denied the Rodriguezes' claim for damage
to their utility room, living room, and entry areas because,

---

[1]Plaintiffs' Petition, Exhibit C to Plaintiffs' Motion to
Remand, Docket Entry No. 7, ¶ 9.

[2]Id. ¶ 12.

[3]Id. ¶¶ 12-13; Loss Notice, Exhibit B to Defendant's Response,
Docket Entry No. 8, p. 2.

[4]Affidavit of Jeffrey Bentley, Exhibit C to Defendant Standard
Guaranty Insurance Company's Response in Opposition to Plaintiffs'
Motion to Remand ("Defendant's Response"), Docket Entry No. 8, ¶ 3.

[5]First and Final Report, Exhibit D-3 to Defendant's Response,
Docket Entry No. 8, p. 1.

[6]Settlement Letter to Hector Rodriguez from June 3, 2009,
Exhibit D-2 to Defendant's Response, Docket No. 8, p. 1.

[7]Id.

-2-

according to Standard, the claim was for flood-water damage, which is not covered by the Rodriguezes' policy.[8]   Likewise, Standard denied the Rodriguezes' claim for damage to their fence because fence damage is also not covered under the policy.[9]

## B.   The Rodriguezes' Allegations

The Rodriguezes' petition, filed in the 11th Judicial District Court of Harris County on July 16, 2010, separates their causes of action into three categories:    (1) causes of action against Bentley, (2) causes of action against both Bentley and Standard, and (3) causes of action against Standard.[10]   With regard to Bentley, the petition alleges:

> 16.   . . . Bentley conducted a substandard inspection of Plaintiffs' property.    Specifically, Defendant Bentley did not spend a sufficient amount of time inspecting the property.    Defendant Bentley was only present at the property for approximately ten minutes and did not inspect the roof.    This is evident in his report which failed to include all of the damages noted upon inspection.    Moreover, the damages that he did include were severely undervalued.    Defendant Bentley's unreasonable investigation led, in part, to the severe underpayment of Plaintiffs' claim and has caused them damages. Despite Plaintiffs' dispute of the claim, they have yet to be fully compensated for their damages by Standard. . . .

---

[8]June 3, 2009, Denial of Claim Letter to Hector Rodriguez, Exhibit D-5 to Defendant's Response, Docket Entry No. 8, p. 1.

[9]June 3, 2009, Denial of Claim Letter to Hector Rodriguez, Exhibit D-4 to Defendant's Response, Docket Entry No. 8, p. 1.

[10]Plaintiffs' Petition, Exhibit C to Plaintiffs' Motion to Remand, Docket Entry No. 7, ¶¶ 32-58.

. . .

20.   Defendants Standard and Bentley misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. . . .

21.   Defendants Standard and Bentley failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. . . .

22.   Defendants Standard and Bentley failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement.  Specifically, Defendants Standard and Bentley failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made.  Furthermore, Defendants Standard and Bentley did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. . . .

23.   Defendants Standard and Bentley failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time.  Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants Standard and Bentley. . . .

24.   Defendants Standard and Bentley refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants Standard and Bentley failed to conduct a reasonable investigation. Specifically, Defendants Standard and Bentley performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. . . .[11]

---

[11]Id. ¶¶ 16-24.

-4-

The Rodriguezes allege that Bentley is individually liable for unfair settlement practices under the Texas Insurance Code (Section 541.060(a)) and for fraud and conspiracy to commit fraud.[12]

## C.  Standard's Removal

Hector and Maria Rodriguez are individuals residing in Harris County, Texas.[13]  Standard Guaranty Insurance Company is a Delaware corporation with its principal place of business in Delaware.[14]  Jeffrey Bentley is an individual residing in Missouri City, Texas.[15]  Standard and Bentley filed a Notice of Removal on August 25, 2010 (Docket Entry No. 1), alleging that although Bentley is a citizen of Texas, his "presence in this suit qualifies as improper joinder as there is no reasonable basis to establish a single cause of action on which Plaintiffs could recover against Bentley in state court."[16]  Standard argues that since Bentley was improperly joined, the court has "original

---

[12]Id. ¶¶ 32-42.

[13]Plaintiffs' Original Petition ("Plaintiffs' Petition"), Exhibit C to Plaintiffs Hector and Maria Rodriguez's Motion to Remand and Supporting Memorandum ("Plaintiffs' Motion to Remand"), Docket Entry No. 7, ¶ 2.

[14]Standard Guaranty Insurance Company's and Jeffrey Bentley's Notice of Removal ("Defendants' Notice of Removal"), Docket Entry No. 1, ¶ 8; Plaintiffs' Petition, Exhibit C to Plaintiffs' Motion to Remand, Docket Entry No. 7, ¶ 3.

[15]Agent Profile, Exhibit B to Plaintiffs' Motion to Remand, Docket Entry No. 7, p. 1.

[16]Defendants' Notice of Removal, Docket Entry No. 1, ¶ 9.

-5-

jurisdiction" under 28 U.S.C. § 1332 because the Rodriguezes and Standard reside in different states and the amount in controversy exceeds $75,000.[17] 28 U.S.C. § 1441(b) (2006).

The Rodriguezes filed their Motion to Remand on September 25, 2010 (Docket Entry No. 7), arguing that this court lacks subject-matter jurisdiction because they specifically alleged valid causes of action against Bentley, a Texas resident.[18] Standard and Bentley respond that the Rodriguezes "have failed to properly allege a reasonable basis upon which they can recover against Bentley" (Docket Entry No. 8); and in support of their argument, they have submitted affidavits, a copy of the Rodriguezes' policy and claim, a copy of Bentley's inspection report, and copies of letters Standard sent to Rodriguez. Bentley testifies in his affidavit that the claim was assigned to him on May 28, 2009; he called to schedule an inspection on June 2, 2009; and he inspected the property on June 3, 2009.[19] Regarding his inspection of the Rodriguezes' property, Bentley states:

6. I personally inspected Mr. Rodriguez's property on June 3, 2009. When I arrived, I met with Mr. Rodriguez, and inspected his property. During this inspection, I went onto the roof of the house and took approximately five photographs. I surveyed the roof for windstorm damage, and took

---

[17]Id. ¶¶ 5-10.

[18]Plaintiffs' Motion to Remand, Docket Entry No. 7, ¶ 16.

[19]Affidavit of Jeffrey Bentley, Exhibit C to Defendant's Response, Docket Entry No. 8, ¶ 5.

measurements of all roof slopes.  My inspection of the roof lasted approximately ten minutes.  I also inspected the exterior of the property, including the fence, and took several photographs.  I observed water damage in the living room, and master bedroom.  I took several photographs and measured these rooms.

7.    During my inspection of the property, Mr. Rodriguez told me that flood waters had come into the utility room, kitchen, and entry area of the residence.  It appeared as though the flood waters caused damage to the walls, flooring, and baseboards in these rooms.  I took several photographs of these rooms. At no time during my inspection did I make any statements to Mr. Rodriguez about the coverage provided by the Policy.  My inspection of the entire property lasted approximately thirty minutes.[20]

Bentley also states that later that day he sent the Rodriguezes the three letters described above — a final-settlement letter (accompanied by his inspection report) and the two letters denying the Rodriguezes' claim with respect to the floodwater and fence damages.[21]

## II.  **<u>Standard of Review</u>**

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  28 U.S.C. § 1441.  The removing party bears the burden of establishing that a state-court suit is properly removable to federal court.  <u>Gasch v. Hartford Acc. & Indem. Co.</u>,

---

[20]<u>Id.</u> ¶¶ 6-7.

[21]<u>Id.</u> ¶¶ 8-9.

491 F.3d 278, 281 (5th Cir. 2007). Doubts about the propriety of removal are to be resolved in favor of remand. Manguno v. Prudential Prop. & Cas. Ins., 276 F.3d 720, 723 (5th Cir. 2002).

If federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b). A case may be removed despite the presence of a resident defendant if the removing defendant shows that the resident defendant was fraudulently or improperly joined. Salazar v. Allstate Texas Lloyd's, Inc., 455 F.3d 571, 574 (5th Cir. 2006). A removing party attempting to prove improper joinder carries a heavy burden. Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002). To establish that a nondiverse defendant has been improperly joined to defeat diversity jurisdiction the removing party must prove either (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. Gasch, 491 F.3d at 281 (citing Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 1825 (2005)). Since the parties do not dispute that Bentley is a Texas resident, only the second method is at issue in this action. "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse]

-8-

defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant." Smallwood, 385 F.3d at 573.

The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). "The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." Id. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state [or nondiverse] defendant." Smallwood, 385 F.3d at 574. In Smallwood the Fifth Circuit provided several examples of evidence that might invalidate a plaintiff's cause of action under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." Id. at 574 n.12. "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." Id. at 573. When the only proffered justification for improper joinder is that there is no

-9-

reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendant alone, the requisite showing has not been made. Id. at 575.  Furthermore, in deciding whether a party was improperly joined, all unchallenged factual allegations, including those alleged in the petition, are taken into account in the light most favorable to the plaintiff, id., and all contested factual issues and ambiguities of state law are resolved in favor of the plaintiff. Gasch, 491 F.3d at 281.

### III.  Analysis

The Rodriguezes have moved for remand, arguing that removal of this action was improper because Bentley's Texas citizenship destroys diversity jurisdiction and because Standard and Bentley have failed to demonstrate that there is no reasonable basis for the claims against Bentley.  Standard and Bentley respond that the absence of a reasonable basis for Bentley's individual liability is evidenced by (1) the Rodriguezes' failure to "plead sufficiently specific facts demonstrating Bentley's liability" and (2) the evidence submitted with Standard and Bentley's response demonstrating that the Rodriguezes' allegations are "contradicted by the true and irrefutable facts of Bentley's involvement with the Plaintiffs' Claim."[22]  In determining whether Standard and Bentley have shown that there is "no reasonable basis" for the court to

---

[22]Defendant's Response, Docket Entry No. 8, ¶ 9.

predict that the Rodriguezes might be able to recover against
Bentley, the court will first conduct a Rule 12(b)(6)-type analysis
of the Rodriguezes' alleged causes of action.  See Campbell, 509
F.3d at 669.   With respect to the claims that survive this
analysis, the court will then "pierce the pleadings" and consider
the summary judgment-type evidence to determine whether there are
discrete and undisputed facts present that would preclude
plaintiffs' recovery.  See Smallwood, 385 F.3d at 574.

A.    **Claims Against Individual Adjusters**

Texas law recognizes suits brought under the Texas Insurance
Code against insurance adjusters in their individual capacities.
The Insurance Code defines "person" as an "individual, corporation,
association, partnership, . . . or other legal entity engaged in
the business of insurance, including an agent, broker, adjuster, or
life and health insurance counselor," and provides that claimants
"may bring an action against another person" if that person engaged
in "an unfair or deceptive act or practice in the business of
insurance," which includes unfair settlement practices.  Tex. Ins.
Code Ann. §§ 541.002(2), 541.151(1), 541.060 (West 2009).   Texas
courts have also recognized this principle.  See Liberty Mut. Ins.
Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 486 (Tex. 1998)
(holding that insurance agents can be liable for deceptive or
misleading acts under the Texas Insurance Code); Gasch, 492 F.3d at

282 (recognizing that Texas law authorizes causes of action against insurance adjusters in their individual capacities).

## B. The Rodriguezes' Allegations

The Rodriguezes allege that Bentley engaged in the following conduct:

16.  . . . Bentley conducted a substandard inspection of Plaintiffs' property. Specifically, Defendant Bentley did not spend a sufficient amount of time inspecting the property. Defendant Bentley was only present at the property for approximately ten minutes and did not inspect the roof. This is evident in his report which failed to include all of the damages noted upon inspection. Moreover, the damages that he did include were severely undervalued. Defendant Bentley's unreasonable investigation led, in part, to the severe underpayment of Plaintiffs' claim and has caused them damages. Despite Plaintiffs' dispute of the claim, they have yet to be fully compensated for their damages by Standard. . . .[23]

The Rodriguezes also allege that both Standard and Bentley (1) "misrepresented to Plaintiffs that the damage to the Property was not covered under the policy, even though the damage was caused by a covered occurrence"; (2) "failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy"; (3) "failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made"; (4) "failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time"; and

---

[23]Plaintiffs' Petition, Exhibit C to Plaintiffs' Motion to Remand, Docket Entry No. 7, ¶ 16.

(5) "refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants Standard and Bentley failed to conduct a reasonable investigation."[24]

Based on these alleged facts, the Rodriguezes allege the following causes of action against Bentley in his individual capacity under the Texas Insurance Code:

34. Defendant Bentley's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(1).

35. Defendant Bentley's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(2)(A).

36. The unfair settlement practice of Defendant Bentley as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(3).

37. Defendant Bentley's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(4).

---

[24]Id. ¶¶ 20-24.

38. Defendant Bentley's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(7).[25]

While paragraphs 34 through 38 of the Rodriguezes' allegations resemble mere formulaic recitations of certain provisions of the Texas Insurance Code, they are clarified and explained by the Rodriguezes' allegations specifically directed at Bentley found in previous paragraphs of the petition. For example, the Rodriguezes allege that Bentley violated Section 541.060(a) of the Code by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of [the Rodriguezes' claim]" for which Standard's liability was "reasonably clear."[26] In support of this cause of action, the Rodriguezes allege that Bentley only inspected their property for ten minutes, wrote a report that failed to include all the damages he noted upon inspection, and severely undervalued the costs of repair and replacement.[27] If taken as true, these allegations substantiate their claim that Bentley did not attempt to effectuate a prompt, fair, and equitable settlement.[28] These specific allegations also provide support for the Rodriguezes' allegations that Bentley refused to pay a portion

---

[25] Id. ¶¶ 34-38.

[26] Id. ¶ 35.

[27] Id. ¶ 16.

[28] Id. ¶ 16.

-14-

of the claim without conducting a "reasonable investigation."[29]  See
Tex. Ins. Code Ann. § 541.060(a)(7). In addition, the Rodriguezes'
claim that Bentley misrepresented a material fact is supported by
their allegation that Bentley (along with Standard) misrepresented
that certain "damage to the Property was not covered under the
Policy" even though it was caused by a covered occurrence.[30]  See
id. § 541.060(a)(1).

"[N]ear verbatim recitation[s] of portions of [the Insurance
Code]" and petitions that "fail[] to allege facts illustrating what
actions are attributable to [the insurance adjuster] individually"
do not provide a reasonable basis for recovery against an in-state
adjuster. Lakewood Chiropractic Clinic v. Travelers Lloyds Ins.
Co., 2009 WL 3602043, at *3, 2-4 (S.D. Tex. Oct. 27, 2009). See
also Frisby v. Lumbermens Mut. Cas. Co., 2007 WL 2300331, at *4
(S.D. Tex. Feb. 20, 2007) (holding that a petition alleging
violations of the Insurance Code by both the insurer and the
adjuster "[did] not sufficiently separate those actions
attributable to [the insurance company] from those of the
[adjuster]"). But here, the Plaintiffs' Petition attributes
conduct specifically to Bentley that is separate from conduct
attributable to Standard. The fact that other of the Rodriguezes'
causes of action against Bentley are not substantiated with

---

[29]Id. ¶ 38.

[30]Id. ¶ 20.

-15-

specific facts[31] does not diminish the viability of the Rodriguezes'
causes of action for which they have alleged specific examples of
Bentley's misconduct.

The court's focus is on whether Bentley was properly joined,
that is, whether there is <u>any</u> claim for which there is a reasonable
basis to predict a favorable outcome against Bentley.   <u>See</u>
<u>Smallwood</u>, 385 F.3d at 573.  Courts in this district have analyzed
allegations similar to the ones in this action and have concluded
that the specific allegations aimed at an in-state adjuster were
sufficient to withstand improper-joinder scrutiny.   <u>See, e.g.</u>,
<u>Harris v. Allstate Tex. Lloyd's</u>, 2010 WL 1790744, at *3-4 (S.D.
Tex. April 30, 2010) (granting motion to remand because the
plaintiff's petition specifically alleged that the adjuster "was
tasked with handling the insurance claim," "failed to fulfill this
task in the manner required by the Texas Insurance Code,"
"misrepresent[ed] the policy coverage," "fail[ed] to attempt a fair
settlement," and "fail[ed] to explain the insurer's reasons for
denying payment"); <u>Campos v. American Bankers Ins. Co. of Florida</u>,
2010 WL 2640139, at *5 (S.D. Tex. June 30, 2010) (same).  The court
concludes that the Rodriguezes' petition contains actionable
allegations specifically directed at the in-state insurance

---

[31]For example, the Rodriguezes' petition does not allege
specific facts in support of their causes of action alleging that
(1) Bentley failed to promptly provide the Rodriguezes with a
reasonable explanation of the basis in the policy for Standard's
offer of settlement, and (2) Bentley failed within a reasonable
time to affirm or deny coverage of the Rodriguezes' claim.

-16-

adjuster, Bentley, and not merely conclusory statements and formulaic recitations.

## C.   Standard and Bentley's Summary Judgment-Type Evidence

The court may also consider any summary judgment-type evidence submitted by the parties to determine if any of the allegations are clearly untrue.  See Smallwood, 385 F.3d at 574.  Although the court may "pierce the pleadings" in this manner, the "inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against [Bentley]."  Id.  Facts worthy of consideration are only those "that easily can be disproved if not true," like for example if the defendant shows that "the in-state doctor defendant did not treat the plaintiff patient."  Id. at 574 n.12.  Standard and Bentley acknowledge that the Rodriguezes allege specific facts against Bentley.[32]  They argue, however, that because the Rodriguezes' allegations specifically directed at Bentley are "patently false and contrary to [the] objective proof" they submitted with their response, there is no "reasonable basis" for the claims aimed at Bentley; and the Rodriguezes' Motion to Remand should be denied.[33]

In his affidavit Bentley acknowledges that (1) he was the adjuster assigned to the Rodriguezes' claim, (2) he inspected their

---

[32]See Defendant's Response, Docket Entry No. 8, ¶ 9 ("Plaintiffs' Original Petition makes *only five specific factual allegations concerning Bentley . . . .*").

[33]Defendant's Response, Docket Entry No. 8, ¶¶ 30-31.

property, (3) he spoke to Hector Rodriguez during his inspection, (4) he wrote an inspection report based on his inspection, (5) he sent a letter to the Rodriguezes with a description of the "final settlement," and (6) he sent two letters to the Rodriguezes denying portions of their claim.[34]

Instead of disputing facts "that can easily be disproved if not true," much of Standard and Bentley's evidence merely raises a fact issue as to whether the Rodriguezes' characterizations as to the quality of Bentley's inspection and performance of his job responsibilities are true. For example, Standard and Bentley argue that the Rodriguezes' allegation that Bentley conducted a "substandard" investigation is "without basis in fact" because Bentley testified that his investigation was thorough and proper, lasting "approximately thirty minutes."[35]   In disputing the Rodriguezes' claim that Bentley's report "failed to include all of the damages noted upon inspection," Standard and Bentley refer to Bentley's testimony that he "did not observe any further damage to Plaintiffs' property" other than what was in his report.[36]  Standard and Bentley also state that some estimates were absent because the types of damage were not covered under the policy, rather than

---

[34]Affidavit of Jeffrey Bentley, Exhibit C to Defendant's Response, Docket Entry No. 8, ¶¶ 3, 5-9.

[35]See Defendant's Response, Docket Entry No. 8, ¶ 15; Affidavit of Jeffrey Bentley, Exhibit C to Defendant's Response, Docket Entry No. 8, ¶¶ 6-7.

[36]Defendant's Response, Docket Entry No. 8, ¶ 17.

-18-

because Bentley failed to observe the damages.[37]   Similarly,
Standard and Bentley contest the Rodriguezes' claim that Bentley's
estimates "severely undervalued" the damage by arguing that the
estimates were created using "an industry standard pricing software
application" and that the Rodriguezes never sent them a counter-
estimate.[38]  In sum, the factual allegations contested by Standard
and Bentley are not those "that easily can be disproved if not
true."[39]  See Smallwood, 385 F.3d at 574 n.12.  Standard and Bentley
have not provided "discrete and undisputed facts" to contest the
Rodriguezes' allegations that Bentley's conduct was not a good
faith attempt at a "prompt, fair, and equitable settlement" or that
Bentley refused to pay a portion of the insurance claim without a
"reasonable investigation."[40]

     Standard and Bentley argue that in the cases from this
district in which the courts have granted motions to remand the

_____

[37]Id.

[38]Id. ¶ 18.

[39]This is not to say that none of Standard and Bentley's
evidence discretely disputes some of the Rodriguezes' allegations.
For example, Bentley's report appears to include photographs taken
from on top of the Rodriguezes' roof, which contradicts the
Rodriguezes' allegation that Bentley did "not inspect the roof."
Bentley's First and Final Report, Exhibit 3 to Defendant's
Response, pp. 7-9.  But because the summary judgment-type evidence
does not disprove all of the Rodriguezes' factual allegations
directed specifically at Bentley, there is a "reasonable basis" for
the court to predict that the claims might be successful.

[40]Plaintiffs' Petition, Exhibit C to Plaintiffs' Motion to
Remand, Docket Entry No. 7, ¶¶ 35, 37.

defendant failed to proffer any evidence to either disprove the allegations or to disprove the plaintiff's proffered evidence.[41] According to Standard and Bentley, this action is distinguishable because the evidence before the court "disprove[s] each of Plaintiffs' allegations against Bentley."[42] Courts in this district that have "pierced the pleadings" and denied remand in similar factual situations, however, have done so based on evidence that clearly and concretely disproves the plaintiffs' allegations against an individual insurance agent or adjuster. See Jimenez v. Travelers Indemnity Co., 2010 WL 1257802, at *4-6 (S.D. Tex. Mar. 25, 2010) (denying remand because the in-state adjuster named as the defendant was not the adjuster who had handled the claim); Frisby, 2007 WL 2300331, at *5 (denying remand because the defendant presented deposition testimony by the plaintiff that the in-state defendant "never made any untrue statements to him, never failed to tell him an important fact, and never made a statement in a way that led him to a false conclusion"). In this action, the evidence before the court does not disprove all of the Rodriguezes' allegations against Bentley. Any deeper of an inquiry would improperly represent an analysis "on the merits" and not one focused solely on joinder.[43]

[41]See Defendant's Response, Docket Entry No. 8, ¶ 29.

[42]Id. ¶ 30.

[43]Because the court concludes that the Rodriguezes' causes of action against Bentley brought under the Texas Insurance Code (continued...)

**D.    Conclusion**

Because the Rodriguezes have alleged specific facts under the Texas Insurance Code aimed directly at Bentley's individual conduct and not disproved by the evidence in the record, the court concludes that Standard and Bentley have not demonstrated that "no reasonable basis" exists for the court to predict that the Rodriguezes might recover against Bentley.  Accordingly, the court lacks subject-matter jurisdiction and will grant the Rodriguezes' motion to remand this action.

## IV.   Order

For the reasons explained above, the court concludes that the Rodriguezes' allegations directed at Bentley in his individual capacity are sufficient to withstand an improper-joinder analysis and that the court therefore lacks subject matter jurisdiction. Accordingly, Plaintiffs Hector and Maria Rodriguez's Motion to Remand and Supporting Memorandum (Docket Entry No. 7) is **GRANTED**; and this action is **REMANDED** to the 11th Judicial District Court of Harris County, Texas.   The clerk will provide a copy of this

---

[43](...continued)
survive an improper-joinder analysis, there is no need for the court to consider whether there is a "reasonable basis" for the Rodriguezes' fraud and conspiracy claims against Bentley.   The court notes, however, that Texas courts recognize common law fraud actions against insurance adjusters in their individual capacities. See Lakewood Chiropractic, 2009 WL 3602043, at *2.

Memorandum  Opinion  and  Order  to  the  District  Clerk  of
Harris County.

    **SIGNED** at Houston, Texas, on this 23rd day of November, 2010.

                                       SIM LAKE
                     UNITED STATES DISTRICT JUDGE